```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------------X
BRIAN MCGRATH,                                  :
                                                :
                    Pro Se Plaintiff,           :
                                                :     MEMORANDUM & ORDER
          -against-                             :
                                                :     05-CV-2826 (DLI)(LB)
CLOCK TOWER PRESS,                              :
                                                :
                    Defendants.                 :
----------------------------------------------------------------------X
```

**DORA L. IRIZARRY, U.S. District Judge:**

Before the court is a motion to dismiss for lack of personal jurisdiction, pursuant to Fed. R. Civ. P. 12(b)(2), filed by defendant Clock Tower Press ("Clock Tower"). The Court grants Clock Tower's motion to dismiss for the reasons discussed below.

### Background

*Pro se* plaintiff, Brian McGrath, owns the copyrights to a photograph collection of golfer Ben Hogan. (Compl. at ¶¶ 5-9.) In January 1998, plaintiff granted Sleeping Bear Press ("Sleeping Bear") the right to use the photographs in a book entitled "The Fundamentals of Hogan" ("The Fundamentals") pursuant to a written contract (the "Fundamentals Contract"). (Compl. at ¶ 10; Def.'s Mem. Of Law ("MOL") at 1-2; Def.'s Reply Ex. 2.) On October 23, 2003, Sleeping Bear transferred its rights under the Fundamentals Contract to Defendant Clock Tower. (*See* Def.'s MOL at 3; Def.'s Reply Ex. 12.)

On June 2005, plaintiff filed the instant action seeking to void the Fundamentals Contract and obtain monetary damages for defendant's alleged failure to pay royalties, failure to "use best efforts to exploit The Fundamentals, breach of the covenant of good faith and fair dealings and fraud. (Compl. at 7-10.) Defendant, a Michigan limited liability corporation, now moves to dismiss

this matter pursuant to Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction. (*See* Def.'s MOL at 2; Gelman Aff. at ¶ 3; Def.'s Reply Ex. 3.) Defendant contends that it has not and does not "do" or "transact" business in New York. (*Id.*) For the following reasons, the court grants defendants' motion to dismiss for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2).

## Discussion

**A.     The Court Does Not Have General Jurisdiction Over Defendant.**

In diversity cases, state law governs whether a federal district court has personal jurisdiction over a defendant.[1] *See* Fed. R. Civ. P. 4(k)(1). In New York, "a foreign defendant is amenable to suit in New York if it is engaged in such a continuous and systematic course of doing business here as to warrant a finding of its presence in this jurisdiction." *See Realuyo v. Abrille*, 93 Fed. Appx. 297, 298 (2d Cir. 2004) (quoting *Frummer v. Hilton Hotels Int'l, Inc.*, 19 N.Y.2d 533, 536, 227 N.E.2d 851, 281 N.Y.S.2d 41 (1967)) (internal quotations omitted). In determining whether a foreign defendant is "doing business," the courts "focus upon factors including: the existence of an office in New York; the solicitation of business in the state; the presence of bank accounts and other property in the state; and the presence of employees of the foreign defendant in the state." *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*, 763 F.2d 55, 58 (2d Cir. 1985) (internal citations omitted). The burden rests on plaintiff to make a *prima facie* showing that this Court has jurisdiction over the defendant. *See Kronisch v. United States*, 150 F.3d 112, 130 (2d Cir. 1998). In addition, all factual matters are to be viewed in the light most favorable to the plaintiff. *Ball v. Metallurgie Hoboken-Ovepeklt*, 902 F.2d 194, 197 (2d Cir. 1990).

---

    1       The Court assumes that Defendant was served with valid process, as defendant does not contest it.

Here, defendant Clock Tower was[2] a Michigan limited liability corporation. *See* Def.'s Reply Ex. 3. Defendant also submitted a sworn affidavit of its President and Chief Executive Officer, Charles Gelman, indicating that Clock Tower "does not do business in the State of New York, nor has it ever done business in New York." *See* Gelman Aff. at ¶ 3. The affidavit states that Clock Tower "ha[d] no offices, agents, employees, subsidiaries, divisions, affiliates, bank accounts, post office box, mailing address or telephone listing in New York, and ha[d] not appointed an agent for service of process in New York," nor does or did it "sell any products or perform any services in New York." *See* Gelman Aff. at ¶¶ 5, 8. The affidavit further states that Clock Tower "has never owned, leased or purchased any office property or real estate in New York" and that "Clock Tower does not keep any corporate records in New York, nor has it held a board of directors' meeting or shareholders' meeting in New York." *See* Gelman Aff. at ¶¶ 6, 9. Thus, Clock Tower does not have such continuous and systematic contacts with New York to rise to the level of doing business.

**B. The Court Does Not Have Specific Jurisdiction Over the Defendant**

New York law provides for personal jurisdiction over a foreign defendant who:

(1) transacts any business within the state or contracts anywhere to supply goods or services in the state; or (2) commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; or (3) commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce; or (4) owns, uses or possesses any real property situated within the state.

---

2   Clock Tower Press, LLC was dissolved in January of this year.

N.Y.C.P.L.R. § 302(a). A foreign defendant who satisfies one of the above may be hailed into court in New York if the claims asserted arose from the above New York related acts. *See Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*, 763 F.2d 55, 59 (2d Cir. 1985).

In determining whether a defendant "transacts business" within the state, the courts consider the following factors: (1) the defendant has an ongoing relationship with a New York corporation; (2) the contract was negotiated or executed in New York; (3) the contract contains a New York choice of law clause; and (4) payments were to be made into New York or performance was to be supervised from New York. *See Agency Rent A Car System, Inc. v. Grand Rent A Car Corp.*, 98 F.3d 25, 29 (2d Cir. 1996). None of the factors is dispositive; the courts look to the totality of the circumstances. *Id.* "If, under the totality of the circumstances, a defendant purposefully availed itself of the privilege of conducting business in New York, thereby invoking the benefits and protections of its laws, the defendant "transacts business" within the meaning of Section 302(a)." *See Wickers Sportswear, Inc. v. Gentry Mills, Inc.*, 411 F. Supp. 2d 202, 208 (E.D.N.Y. 2006) (internal citations omitted).

Here, the defendants did not transact business in New York. First, the contract at issue in this case does not contain a New York choice of law clause, but rather a Michigan choice of law clause. *See* Def.'s Reply Ex. 2 at ¶ 20 (g). Second, the agreement between plaintiff and Sleeping Bear, which was assigned to defendant, did not require or indicate that the services performed or payments made under the contract be directed to New York. *See* Def.'s Reply Ex. 2.

Third, Plaintiff contends that personal jurisdiction over Clock Tower is proper because

Sleeping Bear and/or Clock Tower contracted with Doubleday Books, a New York corporation,[3] to co-publish "the Fundamentals." However, assuming that defendant did, in fact, contract with Doubleday to co-publish The Fundamentals, plaintiff's contention fails because his claims do not arise from the contract between Clock Tower and Doubleday. A plaintiff's claim must arise from "the particular transaction when there is some articulable nexus between the business transacted and the cause of action sued upon, or when there is a substantial relationship between the transaction and the claim asserted." *Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt, LLC*, 450 F.3d 100, 103 (2d Cir. 2006) (quoting *McGowan v. Smith*, 52 N.Y.2d 268, 272, 437 N.Y.S.2d 643, 419 N.E.2d 321 (1981); *Kreutter v. McFadden Oil Corp.*, 71 N.Y.2d 460, 467, 527 N.Y.S.2d 195, 522 N.E.2d 40 (1988) (internal quotations omitted)). Plaintiff's claims arise from the Fundamentals Contract with Sleeping Bear. Merely because Doubleday co-publishes the Fundamentals with Clock Tower, which contains plaintiff's photographs, does not create a substantial relationship between Clock Tower's business with Doubleday and plaintiff's claims. *See Johnson v. Ward*, 4 N.Y.3d 516, 520, 797 N.Y.S.2d 33, 829 N.E.2d 1201 (2005) (holding a connection that is "merely coincidental" is insufficient to support jurisdiction).

Fourth, plaintiff also contends that jurisdiction is proper because Sleeping Bear negotiated and executed the Fundamentals Contract in New York. However, defendant did not negotiate or execute the Fundamentals Contract, but rather Sleeping Bear assigned its rights under the contract to Clock Tower. The assignment was between two Michigan companies and was not negotiated or executed in New York. *See* Def.'s Reply Ex. 3, 13. The mere assignment of a contract does not

---

[3] The Court will assume for purposes of this motion that Doubleday is a New York Corporation.

confer personal jurisdiction over Clock Tower when plaintiff's claims do not arise out of the assignment. *See Johnson*, 4 N.Y.3d at 520, 797 N.Y.S.2d 33, 829 N.E.2d 1201 (finding that "[p]laintiffs' cause of action arose out of Defendant's allegedly negligent driving in New Jersey, not from the issuance of a New York driver's license or vehicle registration."); *Holness v. Mar. Overseas Corp.*, 251 A.D.2d 220, 676 N.Y.S.2d 540 (1998) (despite New York corporation's contract with Virginia company to repair its ships, injury sustained by worker repairing those ships in Virginia did not arise from the contract); *Beacon Enters., Inc. v. Menzies*, 715 F.2d 757 (2d Cir.1983) (plaintiffs' declaratory judgment action that they were not infringing on defendant's trademarks did not arise from her New York business activities); *Fontanetta*, 421 F.2d at 358-59 (plaintiff's claim arose from his failure to pass oral medical boards administered in Pennsylvania and Missouri, not the administration of the written exam in New York); *Gelfand v. Tanner Motor Tours, Ltd.*, 339 F.2d 317, 321 (2d Cir.1964) (plaintiffs' claim arose from negligent acts committed in Arizona, not the purchase of bus tickets in New York). There is no "articulable nexus" between plaintiff's claims and the assignment of the Fundamentals Contract.

Finally, plaintiff contends that "[a]s a publisher, [Clock Tower] enlists salesmen or distributors, who actively promote their titles in this state, take orders in this state, and receive payment for sales of books in this state," and specific jurisdiction may be conferred on this ground. *See* Pl.'s Aff. at ¶ 4. However, plaintiff did not allege any specific secondary activities by defendant that would constitute the transaction of business in New York. *See Worldwide Futgol Assoc., Inc. v. Event Entertainment, Inc.*, 983 F.Supp. 173, 180 (E.D.N.Y. 1997) (finding that without any specific secondary activities by the defendant to constitute transaction of business and where claim does not arise from specific New York business transaction, jurisdiction is improper). Even if

defendant engaged in substantial New York activities to market The Fundamentals in New York, plaintiff's claims do not arise out of those activities. Rather, plaintiff seeks recovery for defendant's failure to adhere to the Fundamentals Contract and issues arising out of that agreement. *See id.* The court is satisfied that defendant has not engaged in any purposeful activity connected with New York that is constitutionally required to confer jurisdiction in New York. *See Int'l Show Co. V. State of Washington*, 326, 319, 55 S. Ct. 154, 159-60, 90 L.Ed. 95 (1958); *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S. Ct. 1228, 1239-40, 2 L. Ed. 2d 1283 (1958) ("it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking benefits and protections of its laws."). Therefore, jurisdiction over defendant is improper.

Accordingly, the instant action is dismissed under Fed. R. Civ. P. 12(b) for lack of personal jurisdiction.

SO ORDERED

DATED:   Brooklyn, New York
         September 22, 2006

_____/s/_____
DORA L. IRIZARRY
United States District Judge